IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CINDI SHIPLEY, | ) CIVIL NO. 05-00145 JMS/BMK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF HAWAI'I, DEPARTMENT | ) ORDER GRANTING IN PART AND |
| OF EDUCATION; MITSUGI | ) DENYING IN PART |
| NAKASHIMA, Chairman of the State of | ) DEFENDANTS' MOTION FOR |
| Hawai'i, Department of Education; | ) PARTIAL DISMISSAL AND/OR |
| PATRICIA HAMAMOTO, | ) FOR PARTIAL SUMMARY |
| Superintendent of Public Schools; | ) JUDGMENT |
| MILTON SHISHIDO, Principal of | ) |
| McKinley High School; GARY | ) |
| OYAMA, Principal of Kaimuki High | ) |
| School; ANNE PAULINO, Vice | ) |
| Principal of Kaimuki High School; | ) |
| CYNTHIA CHUN, Principal of King | ) |
| Intermediate; JOHN DOES 1-10 AND | ) |
| JANE DOES 1-10, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL AND/OR FOR PARTIAL SUMMARY
JUDGMENT

I.  INTRODUCTION

Plaintiff Cindi Shipley ("Plaintiff" or "Shipley"), a teacher formerly

employed by the State of Hawaii Department of Education ("DOE"), contends that

the Defendants discriminated against, harassed and defamed her based on her race

and gender; she also claims that the Defendants retaliated against her for filing grievances with her union.  On September 1, 2006, Defendants State of Hawaii DOE, Mitsugi Nakashima, Patricia Hamamoto, Milton Shishido, Gary Oyama, Ann Paulino, and Cynthia Chun filed a Third Motion For Partial Dismissal for Failure to State A Claim Upon Which Relief Can Be Granted And/Or For Partial Summary Judgment ("Defendants' motion" or "the motion").  A hearing was held on October 30, 2006.  For the reasons stated herein, the court GRANTS IN PART AND DENIES IN PART Defendants' motion for partial summary judgment.

## II.  BACKGROUND

This case arises out of alleged discrimination and retaliation against Shipley by her former employers.  All of the factual allegations contained in Shipley's Complaint occurred between sometime in 1999 and sometime in 2004.  During this period, Shipley taught at five different public schools on Oahu; at each school, the Defendants allegedly discriminated against, retaliated against, defamed, and/or harassed her.  Shipley taught at McKinley High School ("McKinley") from 1999 until 2000 and again from 2001 to 2002; she spent the 2000-2001 school year teaching at Kalani High School ("Kalani").  From about April to June 2002, Shipley taught at Palolo Elementary School ("Palolo").  In

August 2002, Shipley transferred to Kaimuki High School.  Shipley began

teaching at King Intermediate School ("King") in August 2003.

A.     The McKinley Grievances and Arbitration

           In 2000, McKinley's teacher allocation was reduced because of a

drop in student enrollment.  McKinley was staff reduced by nine positions across

several departments; two science, two math, two language arts, one social studies,

one business and one physical education position were staff reduced.  The teachers

in each department with the fewest years of DOE service were staff reduced.

Shipley was one of two teachers with the least seniority in the language arts

department and was staff reduced.

           Shipley filed a union grievance on May 2, 2000 alleging that the DOE

did not follow proper procedures for implementing the staff reduction and another

grievance on June 6, 2000 alleging that McKinley Principal Milton Shishido

("Shishido") retaliated against her for filing the May 2 grievance (collectively,

"the McKinley grievances").  Neither of these grievances claimed racial or gender

discrimination.  The arbitration decision and award dated February 11, 2001

affirmed Shipley's grievances, finding that the DOE's actions did not comply with

the Agreement between the Hawaii State Teachers Association ("HSTA") and the

DOE ("the Agreement" or "the contract").  The arbitrator found that Shishido

could have configured the Master Schedule in such a way that Shipley would have been saved from staff reduction. *See* Defendants' Ex. 5 at 5 ("If Principal had any desire 'to save' [Shipley], it would appear to have been [a] relatively easy exercise to find two 'dangles' [unassigned classes] which [Shipley] was qualified to teach to combine with the 3 or 4 English 'dangles'[.]").  Shipley claims Shishido deliberately created a teaching line of three English classes and two Hawaiian classes to put the teaching line beyond her reach (because she is not certified to teach Hawaiian) and testified at the arbitration that Shishido wanted to save another teacher's position (Kua`ana Lewis, a male Hawaiian teacher), the latter of which was not refuted at the arbitration. *Id.*[1]  Pursuant to the arbitration award, Shipley was reinstated at McKinley for the 2001-2002 school year.

Plaintiff alleges that during the 2000-2001 school year, while teaching at Kalani, Shishido retaliated against her for filing the McKinley grievances by telling Kalani administrators that Shipley filed the grievances.  In

---

[1] The arbitrator concluded that the "ultimate inference that can be readily drawn from this aspect of the master scheduling process was that the development of the Master Schedule as supervised by Principal produced in this case a residual combination of English and Hawaiian 'dangles' that could not be assigned to [Shipley] for her lack of Hawaiian language qualifications but yet which apparently was designed for and was ultimately assigned to an untenured teacher who was uncertified to teach English." Defendants' Ex. 5 at 5.  Some time after the Master Schedule was completed, Kayleen Loui, a female teacher certified in English and Hawaiian, and not Lewis, was assigned the three English and two Hawaiian classes. *See* Defendants' Ex. 11; Shishido Decl. at ¶ 8.

fall 2001, Shipley returned to McKinley.  In January 2002, McKinley teacher Leilani Okuda filed a DOE Civil Rights Complaint against Shipley.  *See* Defendants' Ex. 16.  As a result, Shipley alleges that she suffered a nervous breakdown and went out on sick leave.  In April 2002, Shipley was granted a hardship transfer to Palolo.  She alleges that, from the first day she arrived at Palolo, Shishido telephoned her in order to harass her for filing the McKinley grievances.  Shipley's Complaint alleges that after her fifth day of work at Palolo, her doctors put her on medical leave and she did not return to Palolo.

B.     The King Grievance and Arbitration

            On April 8, 2002, Shipley interviewed with Principal Cynthia Chun ("Chun") and Vice Principal Patrick Macy (a white male) for an 8th grade English position at King ("first application").  According to Defendants, Shipley did not get the job because she did not score well during the interview.  Shipley then interviewed again on May 20, 2002 for a 7th grade English position at King ("second application").  The interview committee was made up of Chun and Vice Principal Robert Lockyer (a white male).  Again, according to Defendants, Shipley was not selected because of her poor interview ratings.  Both parties agreed at the October 31 hearing that Paul Spitale (a white male from out-of-state) or Edward Duggan (a white male transfer from Honolulu's Castle High School) was hired

5

instead.  Shipley alleges that Chun and members of the selection committee "stated that the reason they denied her was because she could not understand the culture of the Kaneohe community and that she was unfamiliar with the Kaneohe area."  Complaint at ¶ 33.

Shipley filed a grievance because of her non-selection for the King positions on June 28, 2002 ("King grievance"), alleging several contract violations, including discrimination.  On July 30, 2003, the arbitrator concluded that Shipley's non-selection violated the Agreement and awarded her a 7th grade position at King, beginning August 2003.

Shipley taught at Kaimuki during the 2002-2003 school year.  She alleges that while at Kaimuki, Principal Ann Paulino harassed and retaliated against her for filing grievances.  Paulino claims that she had no knowledge of the grievances and did not speak with Shishido about Shipley.  Paulino Decl. at ¶ 6.  As a result of the King grievance, Shipley was awarded a 7th grade position at King on July 30, 2003.  Classes began at King on August 1, 2003, but Shipley was not assigned a teaching position until August 25.  Shipley alleges that when she arrived at King, her classroom had been vandalized, her supplies and desk were missing, and a petition for her removal was circulating.  Shipley claims that King Principal Chun knew about these retaliatory acts, but ignored them.  After one day

6

at King, Shipley alleges she suffered another nervous breakdown and did not return to King.  In May or June of 2004, Shipley learned that a copy of her McKinley grievance record was in her personnel file at King, which, she alleges, followed her from school to school.

C.     Shipley's Complaint

On May 27, 2004, Shipley filed an employment discrimination claim with the Equal Employment Opportunity Commission ("EEOC") and Hawaii Civil Rights Commission alleging that she was discriminated against on the basis of her race, sex, disability and age and that she was subject to retaliation because she filed union grievances.  Shipley filed her Complaint with this court on March 3, 2005.  The Complaint alleges that each Defendant is liable based on the following:

1. Title IX (sex discrimination);

2. Title IX (deliberate indifference);

3. Intentional Infliction of Emotional Distress;

4. 42 U.S.C. § 1981;

5. 42 U.S.C. § 1985;

6. 42 U.S.C. § 1986;

7. 42 U.S.C. § 1983;

8. Chapters 368 and 378 of the Hawaii Revised Statues;

9.  Title VII (race discrimination);

10.  Defamation, libel, and holding Plaintiff in a false light; and

11.  Punitive Damages.[2]

In their motion, Defendants seek the following:  (1) summary judgment and/or dismissal for failure to state a retaliation claim against any defendant under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding the McKinley grievances; (2) summary judgment as to all defendants in Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 alleging discrimination based on the staff reduction at McKinley and Shipley's non-selection at King; and (3) summary judgment as to Counts 3 and 10 against Defendants Shishido, Paulino, and Chun regarding the contents of Plaintiff's personnel file.

Based on the following, the court GRANTS Defendants' motion for partial summary judgment with respect to Plaintiff's retaliation claim under

---

[2] The following claims survive this court's June 1, 2006 Order (Doc. No. 60):  Counts 1, 2, 9, and 11 against all State Defendants (the DOE together with the individually named Defendants in their official capacities); Counts 4, 5, 6, and 7 against the individually named Defendants in their official capacities to the extent that Shipley seeks prospective relief; and Counts 3, 4, 5, 6, 7, 8, 10, and 11 against the individual capacity defendants.  All claims against Gary Oyama were dismissed.  The court held in its August 23, 2006 Order (Doc. No. 98) that a two-year statute of limitations applies to Shipley's state law tort claims so that any claims accruing before March 3, 2003 are time-barred. The court also held that collateral estoppel applies to the arbitrator's decision regarding the King grievance so that, to the extent Shipley seeks to argue that her rejection from King was the result of conversations among the Defendants during the hiring process, she was precluded from doing so.

Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding the McKinley grievances; Plaintiff's discrimination claims under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding Plaintiff's non-selection at King; and Counts 3 and 10 against Defendants Shishido, Paulino, and Chun regarding the contents of Plaintiff's personnel file. The court DENIES Defendants' motion for summary judgment with respect to Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 alleging discrimination based on Shipley's staff reduction at McKinley.

## III.  LEGAL STANDARDS

### A.   Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  When reviewing a motion to dismiss, a court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).  A complaint should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

B.     Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

## IV.   ANALYSIS

A.     Plaintiff's Retaliation Claims Based on the McKinley Grievances

Defendants seek summary judgment and/or dismissal for failure to state a retaliation claim against any defendant under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding the McKinley grievances.

10

## 1.  Title VII framework

Title VII's anti-retaliation provision forbids an employer from discriminating against an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are analyzed under the burden shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).  Under the first step of this framework, a plaintiff must make a showing of retaliation:

> A plaintiff may meet his [or her] burden of proof for a claim of retaliation under Title VII by showing, by a preponderance of the evidence, (1) involvement in a protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action.

*Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).  If an employee establishes a prima facie retaliation case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action, and the employee then bears the ultimate burden of demonstrating that this reason is pretextual. *McGinest*, 360 F.3d at 1124.

The Supreme Court recently addressed Title VII's anti-retaliation provision in *Burlington Northern & Santa Fe Railway Co. v. White,* 126 S. Ct. 2405 (2006). *Burlington Northern* resolved a split among the circuits regarding two issues: "whether the challenged action has to be employment or workplace related and about how harmful that action must be to constitute retaliation." *Id.* at 2410. On the first issue, the Supreme Court concluded that "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412-13.

As to the second issue, *Burlington Northern* established that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (citation and quotation signals omitted). *Burlington Northern* explains that the "anti-retaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* (Citation and quotation signals omitted.)

The same *McDonnell Douglas* framework is applicable to Shipley's other discrimination and retaliation causes of action. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1125 (E.D. Cal. 2006) (retaliation based on an individual's complaints of sex discrimination under Title IX); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.5 (9th Cir. 2006) (employment discrimination claims under 42 U.S.C. § 1981); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (discrimination claims under Hawaii law). With this statutory framework in mind, the court next addresses the merits of the State Defendants' motion for summary judgment and/or dismissal as to the retaliation claims stemming from the McKinley grievances.

### 2. Shipley has not established a prima facie case of retaliation with regard to the McKinley grievances

Defendants argue that Shipley's retaliation claims fail as a matter of law because she does not allege that she was retaliated against for any conduct protected under Title VII.[3] The court agrees and concludes that Shipley has not established a prima facie case of retaliation.

---

[3] Defendants note that the only retaliation claims that would survive this motion are those against Defendant Chun arising from the filing of the King grievance (since the King grievance includes allegations of discrimination).

13

Shipley's Complaint fails the first prong; it does not allege involvement in a protected activity opposing an unlawful employment practice with regard to the McKinley grievances.  The "opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988); *see also Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978) ("[U]nder the clear language of the 'opposition' clause . . . , a case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a [Title VII] violation.").

Shipley's two McKinley grievances allege that she was staff reduced in violation of the Agreement and that Shishido retaliated against her for filing a grievance.  The arbitrator affirmed her grievances, finding that the McKinley staff reduction violated the contract's Articles VII-B (Master Schedule) and VII-F (Staff Reduction).

Shipley made *no* allegations of discrimination in the grievances or the arbitration proceedings and the arbitration decision makes no reference to race or gender discrimination.  Nowhere does she allege that the Defendants interfered with her unfettered access to Title VII's remedial mechanisms or took any action to deter her from complaining to the EEOC, the courts, or her employers.  *See Burlington N. & Santa Fe Ry. Co.,* 126 S. Ct. at 2415.

14

Shipley argues that such allegations may be *inferred* from the circumstances.  She claims that "such retaliation can be shown to be motivated by illegal racial or gender bias in this case, by the very fact of the bogus manner of the contract violations the Defendants inflicted upon the Plaintiff[.]"  Pl. Mem. in Opp. at 17.  This argument is wholly without merit.

Shipley has presented no evidence that she "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation with regard to the McKinley grievances.  The court will not infer from the circumstances that she did; this would simply amount to speculation by the court.  In any event, Shipley has provided no facts from which such an inference can be made.  In short, with respect to her claims regarding her treatment at McKinley, Shipley did not engage in any "protected activity" until she filed her EEOC Complaint in 2004.[4]

Because Shipley has not set forth a prima facie case of retaliation under Title VII (Count 9) or Title IX (Counts 1 and 2), there is no basis for her

---

[4] To the extent Shipley argues that she did not raise the issue of racial or sexual discrimination in the McKinley grievances and arbitration because this court has original jurisdiction over her discrimination claims (while arbitration was the proper forum for interpreting her contract disputes), this argument is entirely unpersuasive.  First, this argument is fully undermined by the fact that the HSTA Agreement contains a non-discrimination provision and she *did* allege discrimination in the King grievance.  Second, Shipley has presented no authority to support her bare assertion that this court's jurisdiction over Title VII strips the arbitrator of authority to consider claims of discrimination.

claims under §§ 1981 and 1981A (Count 4), 1985 (Count 5), 1986 (Count 6), 1983 (Count 7), HRS Chapters 368 and 378 (Count 8), and for punitive damages (Count 11).  The State Defendants' motion for summary judgment is GRANTED as to Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 to the extent these Counts allege retaliation based on the McKinley grievances.

B.    Shipley's Discrimination Claims

Defendants seek summary judgment as to Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 alleging discrimination.  The court first addresses the framework for Title VII race and gender discrimination claims and Title IX claims and then discusses Shipley's discrimination claims at McKinley and King.

1.    **Legal framework**

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  To establish a prima facie case, a plaintiff must offer proof:

> (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated

16

the plaintiff differently than a similarly situated employee who
does not belong to the same protected class as the plaintiff.[5]

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

"The requisite degree of proof necessary to establish a prima facie case for Title

VII . . . on summary judgment is minimal and does not even need to rise to the

level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124

F.3d 1145, 1148 (9th Cir. 1997).  Establishing a prima facie case "creates a

presumption that the plaintiff's employer undertook the challenged employment

action because of the plaintiff's race." *Cornwell,* 439 F.3d at 1028.  Defendants,

to rebut this presumption, "must produce admissible evidence showing that the

defendant undertook the challenged employment action for a 'legitimate,

nondiscriminatory reason.'" *Id.*  (*Quoting McDonnell Douglas Corp.*, 411 U.S. at

802.)

---

[5] With respect to the last element, "proof that the employer filled the sought position with
a person not of the plaintiff's protected class is neither a sufficient nor a necessary condition of
proving a Title VII case, and it is not prescribed by the Supreme Court's original statement of the
prima facie test." *Lyons v. England*, 307 F.3d 1092, 1116 (9th Cir. 2002) (citation and quotation
signals omitted).  *Lyons* explains that "*McDonnell Douglas* should be 'read literally' to allow a
plaintiff to establish a prima facie case of failure-to-promote discrimination 'whenever the
employer continues to consider other applicants whose qualifications are comparable to the
plaintiff's after refusing to consider or rejecting the plaintiff,' even where the employer fills the
position with a member of the plaintiff's protected class." *Id.* (*quoting Diaz v. Am. Tel. & Tel.*,
752 F.2d 1356, 1359 (9th Cir. 1985)).

17

If the defendant does so, the burden shifts to the plaintiff to show that the given reason is merely pretext for a discriminatory motive. *Id.* "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). The plaintiff can make either showing through direct or circumstantial evidence of discrimination. *Coghlan v. American Seafoods Co., LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* Circumstantial evidence requires an additional inferential step to demonstrate discrimination. *Id.* In order to survive summary judgment, the circumstantial evidence offered by the plaintiff "must be 'specific and substantial' to defeat the employer's motion for summary judgment." *Id.* (citation omitted); *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004).[6] The plaintiff needs to do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle*

---

[6] As this court has previously discussed, there is uncertainty regarding the circumstantial evidence a Title VII plaintiff must set forth to show pretext. *See Kim v. Potter*, 2006 WL 3200361 *9-10, 2006 U.S. Dist. LEXIS 85818 *29-33 (D. Haw. Apr. 26, 2006). Although a three-member panel of the Ninth Circuit has questioned whether a "specific and substantial" showing is required, it has not overruled the applicability of this standard. *See Cornwell*, 439 F.3d at 130-31. The court applies the "specific and substantial" standard to the present matter.

*Broad. Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir. 1986).  Further, the plaintiff's

"subjective personal judgments of [his or her] competence alone do not raise a

genuine issue of material fact."  *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267,

270 (9th Cir. 1996).

　　　　In Counts 1 and 2, Shipley alleges violations of Title IX, which

prohibits discrimination on account of sex in any education program or activity

that receives federal financial assistance.  *See* 20 U.S.C. §§ 1681-1688.  Title VII

principles guide the resolution of Title IX sexual harassment and discrimination

claims.  *See Gallant v. Bd. of Trs. of Cal. State Univ.,* 997 F. Supp. 1231, 1233

(N.D. Cal. 1998);  *Patricia H. v. Berkeley Unified Sch. Dist.,* 830 F. Supp. 1288,

1290 (N.D. Cal. 1993) ("[A]ppellate courts have turned to the substantial body of

case law developed under Title VII for assistance in interpreting Title IX.  Because

Title VII prohibits the identical conduct prohibited by Title IX; i.e., sex

discrimination, we regard it as the most appropriate analogue when defining Title

IX's substantive standards.") (Citation and quotation signals omitted.)  The same

burden-shifting analysis applies to Shipley's other federal and state law claims

alleging racial or gender discrimination.  The court next turns to Shipley's claims

of race and gender discrimination arising from the McKinley staff reduction and

her non-selection at King.

## 2.     McKinley staff reduction

Shipley alleges that Defendants violated her right to equal
employment opportunity, "and the students' rights to non-discrimination on the
basis of gender in the selection of teachers, and to be free from invidious
malicious harassment" and that Shishido "and some other Defendants are Asian
and discriminated against Plaintiff because she is not, despite orders not to do so."
Complaint at ¶¶ 61, 69.  Shipley has established a prima facie case of race and
gender discrimination:  she is a member of a protected class, she performed
satisfactorily, she was staff reduced, and Defendants treated her differently than a
similarly situated employee who does not belong to the same protected class (since
Lewis, a non-Caucasian male was originally given the three English and two
Hawaiian classes).

The burden shifts to the Defendants to establish a legitimate, non-
discriminatory reason for Shipley's staff reduction.  Defendants assert that
Shipley's reduction was contractually based (Shipley was one of two teachers in
the Language Arts department with the least seniority) and Matsuzaki, the other
female Language Arts teacher staff reduced, is an Asian female (which counters
Shipley's claim that Defendants are Asian and discriminated against Plaintiff
because she is not).  The 2001 staff reductions across all departments reflect that

20

male and female teachers of many ethnic backgrounds were staff reduced, which is evidence that Defendants did not treat whites differently than non-whites.[7] Defendants have presented valid, non-discriminatory reasons for Shipley's staff reduction.

Shipley therefore has the burden of showing that the Defendants' explanation was merely a pretext for impermissible discrimination. Shipley's response to Defendants' proffered reasons is that the "blatant and repeated violating of the school staffing rules under the HSTA contract . . . are then also clear though circumstantial evidence of . . . discrimination against the Plaintiff." Pl. Mem. in Opp. at 2. According to the McKinley arbitration award, Shipley accused Shishido of deliberately creating a teaching line of three English classes and two Hawaiian classes (because she is not certified to teach Hawaiian) and her claim that Shishido wanted to save Lewis's position was not refuted at the arbitration. The arbitrator concluded that the "ultimate inference that can be readily drawn from this aspect of the master scheduling process was that the development of the Master Schedule as supervised by Principal produced in this case a residual combination of English and Hawaiian 'dangles' that could not be

---

[7] More non-whites were staff-reduced than whites. Of the nine McKinley teachers staff-reduced in spring 2001, four (including Shipley) were white, while the other five were designated Asian, "mixed," or "other." *See* Shishido Decl. at ¶ 11.

assigned to [Shipley] for her lack of Hawaiian language qualifications but yet which apparently was designed for and was ultimately assigned to an untenured teacher who was uncertified to teach English."[8]  Defendants' Ex. 5 at 5. Construing the facts in favor of the non-moving party, Shishido's alleged manipulation of the Master Schedule raises an inference that the Defendants' proffered explanation is unworthy of credence.  Although it is a close call, the circumstantial evidence offered by the plaintiff is specific and substantial enough to show pretext and defeat Defendants' motion for summary judgment.  The court DENIES summary judgment with respect to Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding Plaintiff's staff reduction at McKinley.

### 3.     King Intermediate failure to hire

Shipley alleges that Chun and the selection committee "illegally discriminated against the Plaintiff by offering the teaching position to a less qualified, non-Caucasian, candidate . . . [who had] no prior teaching experience." Complaint at ¶ 35.[9]  She also alleges that Chun, who is Asian, discriminated against her because she is white.  Despite the Complaint's error, Shipley has made

---

[8] Lewis, a non-Caucasian male, was the untenured teacher originally assigned the three English and two Hawaiian classes.

[9] In fact, as set forth *supra*, this allegation in the Complaint was incorrect; a Caucasian candidate (Spitale or Duggan) filled the teaching position.

a prima facie case for gender and race discrimination; she is a member of a

protected class, she was qualified for a transfer to King, and she was not selected.

As to gender discrimination, a male (Spitale or Duggan) was hired and, as to race

discrimination, statements that Shipley "could not understand the culture of the

Kaneohe community" (Complaint at ¶ 33) satisfy the final element of the prima

facie case.

   The State offers a legitimate, non-discriminatory reason for Shipley's

non-selection for the King English positions:  both times she was interviewed, the

selection committees rated her "poor" and recommended that she not be hired.[10]

As to the claim of race discrimination, Defendants also point out that a Caucasian,

like Plaintiff, was hired to fill the position.

   Shipley therefore has the burden of showing that the Defendants'

explanation was merely a pretext for impermissible discrimination.  Shipley argues

that (1) the DOE's continued violation of the union contract, (2) the presence of

the McKinley grievance record in her personnel file, and (3) a comment that she

---

[10] The "Interview Assessment" forms completed by the selection committee members from both of the interviews show uniformly poor ratings.  *See* Ex. B to Defendant's Reply.  The forms signed by Chun indicate that Shipley was not recommended because she was "unorganized in thoughts, failed to answer questions, did not know what CSSS is," (Form 101d, dated Apr. 10, 2002) and that she "lacks knowledge of the two major initiatives -- standards based education and the comprehensive student support system.  She was not able to communicate clearly and concisely." (Form 101d, dated May 21, 2002).  *Id.*

did not have enough knowledge of the community are all evidence of pretext. The court is not convinced. The first two claims do not evidence discriminatory motive; the arbitration award (finding contract violations) did not, even inferentially, address discrimination[11] and the fact that the McKinley grievance record was in Shipley's personnel file is not, without more, evidence of racial or gender discrimination.

A closer call is Shipley's claim that a comment (that she did not understand the Kaneohe community) is code for racial discrimination.[12] She claims this comment really means that "she's not local enough," which is code for

---

[11] The King arbitration award does not indicate that discrimination more likely motivated the employer or that the employer's explanation is unworthy of credence. The arbitrator concluded, "[e]ven though the Principal believed that [Shipley] was not the ideal choice the Code and the CBA read together make that irrelevant unless she is asserting that [Shipley] is not a qualified English teacher. The Principal was not impressed by [Shipley's] qualifications but she did not say that [Shipley] was not qualified to be an English teacher." Defendants' Ex. 9 at 11. There is no indication that the reasons stated for Shipley's non-selection were pretextual; the selection committee's view that she was a poor candidate was simply deemed "irrelevant" in light of a legal interpretation of the union contract by the arbitrator.

[12] The record does not support Shipley's claim that this comment was made by Chun. Chun stated that "[a]t no time did I state (or conclude) that the reason the selection committee did not select Plaintiff was because she could not understand the culture of the Kaneohe community and/or that she was unfamiliar with the Kaneohe community." Chun Decl. at ¶¶ 4,14. In turn, Shipley has offered no evidence regarding when, how, or to whom this comment was allegedly made. Shipley has not set forth facts sufficient to create a genuine issue of material fact on this point with respect to Chun. There is no evidence before the court, however, with respect to whether such a comment was made by other members of the selection committees. Construing the facts in favor of Shipley, the non-moving party, there is an issue of fact as to whether a comment was made by someone. The court will therefore consider whether any such comment is evidence of pretext.

"I don't like her because she's not my kind."  Pl. Mem. in Opp. at 7.  Whether this comment is reasonably susceptible of the discriminatory meaning ascribed to it by Shipley is questionable.  The fact that Spitale or Duggan was hired weakens Shipley's claim because both are white (like Shipley) and Spitale was hired from New York (so he also is not "local").  The fact that Shipley lived in the Kaneohe area and that her son attended King raises questions about the accuracy of the comment, but the comment itself does not establish pretext for discriminatory hiring.  Because Shipley has failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment is appropriate. The court GRANTS summary judgment as to discrimination claims under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding Shipley's non-selection at King.

C.      Hostile Work Environment Claims

        1.      **Facts in the Complaint regarding hostile work environment**

        Shipley's Complaint does not include a cause of action specifically alleging a hostile work environment claim under Title VII or § 1981.  Shipley does, however, plead facts that support a hostile work environment claim.[13]  She

_____

        [13] At the hearing, the court allowed supplemental briefing on the hostile work environment claims raised in Plaintiff's Memorandum in Opposition.  Defendants filed a supplemental memorandum on November 6, 2006 (Doc. No. 135).  Plaintiff did not submit supplemental briefing.

alleges that Defendant Shishido called Kalani and Palolo daily in order to harass
her for filing the McKinley grievances and that she sought a Temporary
Restraining Order against him; that she was frequently marked absent when she
was at work; that Defendant Paulino (who was not her supervisor at Kaimuki)
ordered her to disclose confidential medical information, sat in on her classes
taking notes and gave her frivolous written reprimands; that she was harassed at
King when her classroom was vandalized and a petition was circulated to have her
removed; and that she suffered several emotional breakdowns as a result of the
alleged harassment.  Complaint at ¶¶ 19, 27, 29, 30, 38, 42-47, 53-55.

### 2.    Shipley cannot sustain a hostile work environment claim

"A plaintiff asserting a Title VII claim under a hostile work
environment theory must show (1) the existence of a hostile work environment to
which the plaintiff was subjected, and (2) that the employer is liable for the
harassment that caused the hostile environment to exist."  *Freitag v. Ayers*, 468
F.3d 528, 539 (9th Cir. 2006).[14]  To establish a hostile work environment premised
on either race or sex, a plaintiff must show:  "(1) that he [or she] was subjected to

---

[14] The same standard applies to a § 1981 and Title IX hostile work environment claim.
*See Manatt v. Bank of America*, 339 F.3d 792, 797 (9th Cir. 2003) ("[T]hose legal principles
guiding a court in a Title VII dispute apply with equal force in a § 1981 action."); *Oona R.S. v.
McCaffrey*, 143 F.3d 473, 477 (9th Cir. 1998) (" Title VII standards apply to hostile environment
claims under Title IX.").

verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642.  The third element requires consideration of the totality of the circumstances and whether the harassment was both objectively and subjectively abusive.  *Freitag*, 468 F.3d at 539.

Shipley's Complaint fails the first prong; she does not allege that she suffered from racial or sexual harassment in the workplace.  In fact, Shipley alleges that these acts were in retaliation for the grievance filings, but not that she was subject to any conduct that was racial or sexual in nature.  There is some evidence that Shipley had unpleasant work experiences at McKinley, Palolo, Kaimuki, and King, but there is no indication that she was singled out for poor treatment because of her gender or race.[15]  Simply put, Shipley has pointed to no evidence that the allegedly hostile work environment was in any way premised on racial or sexual harassment, thus the alleged conduct did not violate Title VII.

---

[15] Shipley is correct that the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), dictates that liability for a hostile work environment claim may extend to harassment that occurred before the filing period because such claims are "different in kind from discrete acts." *Id.* at 115.  *Morgan*, however, does not affect the court's conclusion that Shipley has not presented any evidence that the allegedly hostile work environment was premised on racial or sexual harassment.

27

D.      Tort Claims Relating to Shipley's Personnel File

Plaintiff's Complaint states that "a record of her original grievance filed against Defendant Milton Shishido at McKinley High School was kept in her personnel file at King Intermediate School."  Complaint at ¶ 56.  Defendants seek summary judgment as to Counts 3 and 10 against Defendants Shishido, Paulino, and Chun regarding the contents of Plaintiff's personnel file.

### 1.      Count 3:  intentional infliction of emotional distress

Count 3 alleges that all Defendants intentionally inflicted emotional distress upon Shipley by repeatedly harassing and holding her up for public ridicule and embarrassment.[16]  Defendants Shishido, Paulino, and Chun each state in their declarations that they did not place the McKinley grievance or arbitration award in her file.  Further, Defendants argue that there is no evidence that anyone saw the grievance record in her file while it was at McKinley, Kalani, Palolo, Kaimuki, or King.

---

[16] In Hawaii, "the elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).  "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'  Moreover, 'extreme emotional distress' constitutes, *inter alia*, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'"  *Enoka v. AIG Haw. Ins. Co., Inc.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) (citations omitted).

28

Other than the allegations in the Complaint (that Defendants intentionally inflicted emotional distress upon her by repeatedly harassing her and holding her up for public ridicule and embarrassment), Plaintiff has set forth no evidence that Defendants Shishido, Paulino, or Chun placed the grievance record in her personnel file, thereby causing her emotional distress.  According to Defendant Shishido, he did not place a copy of the arbitration decision in Shipley's personnel file.  Shishido Decl. at ¶ 24.  Paulino and Chun each assert that they never read the arbitration decision, that they did not know it was in Shipley's file and that they had no knowledge of her grievance past at McKinley. Paulino Decl. at ¶¶ 5, 6; Chun Decl. at ¶¶ 5, 27.

Plaintiff's only response is that, in her personnel file, she found "a copy of the arbitration from McKinley.  This file had been following me around with prejudicial information in it of Milton Shishido's version of his response to the grievance at McKinley," and that "records of my original grievance with Milton Shishido had been placed in my Department of Education Personnel file, for all new principals to see whenever I applied for work, in violation of the Settlement Agreement order."  Shipley Decl. at ¶¶ 50, 61.  Plaintiff neither alleges nor presents any evidence that Defendants Shishido, Paulino, or Chun placed the grievance record in her file.

29

The allegations in the Complaint and Shipley's Declaration are not sufficient to survive summary judgment; she has set forth no evidence to support an essential element of her case.  Here, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323.  Shipley has failed to present a genuine issue as to whether Defendants Shishido, Paulino, and Chun intentionally inflicted emotional distress upon her with respect to the McKinley grievance record in her personnel file.  The court GRANTS Defendant's motion as to Count 3 with respect to the contents of Plaintiff's personnel file.

### 2.    Count 10:  false light and defamation

In Count 10, Shipley alleges that the Defendants made false statements that tend to hold her in a false light and constitute slander and libel. Complaint at ¶¶ 70, 71.  Defendants argue that the McKinley grievance record found in Shipley's personnel file is not defamatory and that there no evidence any Defendant "published" the "defamatory" material because neither Shishido, Paulino, nor Chun put a copy of the McKinley grievance record in Shipley's personnel file and do not know who did.

a.   <u>False light</u>

In order to establish a claim for false light, "the plaintiff must show

that defendant had knowledge of . . . or reckless disregard as to the falsity of the

publicized matter and the false light in which the plaintiff would be placed, which

would be highly offensive to a reasonable person[.]" *Chung v. McCabe Hamilton*

*& Renny Co., Ltd.*, 109 Haw. 520, 534, 128 P.3d 833, 847 (2006) (citations and

quotation signals omitted).  "[A] cause of action for false light differs from

defamation in that it is enough that a plaintiff is given unreasonable and highly

objectionable publicity that attributes to him characteristics, conduct or beliefs that

are false, and so is placed before the public in a false position." *Id.*

Shipley's allegations are deficient for several reasons.  First, Shipley

has put forward no evidence that the "publicized matter" (i.e., the arbitration

decision in her personnel file) was "false."  Second, there is no evidence that the

Defendants "had knowledge of or reckless disregard as to the falsity" of the

McKinley grievance record in her personnel file or the false light in which she

would be placed.  Finally, Plaintiff has presented no evidence that any of the

defendants "published" the allegedly defamatory grievance record.  Shipley argues

simply that:  "just because [Shishido] says he didn't put it there does not make it

true;" "if she [Paulino] were doing her job she would have read [Shipley's] file;"

31

and "they should have had a copy of Plaintiff's personnel file and it is incompetent of them not to, when she was applying for the job." Shipley's Counter-Statement of Facts at ¶¶ 29, 30, 24. Shipley's bare assertions are insufficient. Plaintiff has not "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (*citing* Fed. R. Civ. P. 56(e)). Defendants have established that there is no genuine issue of material fact and Shipley fails to make a showing sufficient to establish the existence of an element essential to her case. *See Broussard,*, 192 F.3d at 1258 (*quoting Celotex*, 477 U.S. at 322).

> b.    Defamation, slander and libel

Under Hawaii law, in order to sustain a claim for defamation involving a non-public figure, a plaintiff must establish the following four elements:  (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Gold v. Harrison,* 88 Haw. 94, 100, 962 P.2d 353, 359 (1998).

Shipley has not established that any of these Defendants made the allegedly false and defamatory statement about her. As discussed above, Shipley

32

has failed to present a genuine issue as to whether Defendants Shishido, Paulino, and Chun were responsible for (or even had knowledge of) the grievance record in her personnel file.[17]  Shipley has set forth no evidence or argument on the issue and may not simply rest on the allegations in her Complaint since Defendants have made a showing sufficient for summary judgment.  Shipley, therefore, cannot sustain a claim for defamation based on the grievance record.  The court GRANTS the motion as to Counts 3 and 10 with respect to Shipley's personnel file.

## V.   CONCLUSION

        For the reasons stated herein, the court GRANTS Defendants' motion for partial summary judgment with respect to Plaintiff's retaliation claim under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding the McKinley grievances; Plaintiff's discrimination claims under Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 regarding Plaintiff's non-selection at King; and Plaintiff's claims under Counts 3 and 10 against Defendants Shishido, Paulino, and Chun regarding the contents of Plaintiff's personnel file.  The court DENIES Defendants' motion for summary

---

[17] Further, the court has reviewed the grievance and arbitration decision and concludes that they are not reasonably susceptible of a defamatory meaning.  "Where the court finds that the statements are not susceptible to the meaning ascribed to it by the plaintiffs, the case should not be sent to the jury."  *Gold*, 88 Haw. at 101, 962 P.2d at 360.

judgment with respect to Counts 1, 2, 4, 5, 6, 7, 8, 9, and 11 alleging

discrimination based on Shipley's staff reduction at McKinley.

The remaining claims include retaliation stemming from the filing of

the King grievance, discrimination based on the McKinley staff reduction, and

state tort claims unrelated to Shipley's personnel file that accrued after March 3,

2003.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 22, 2007.

_/s/ J. Michael Seabright_

_J. Michael Seabright_
_United States District Judge_

_Shipley v. Department of Education, et al_, Civ. No. 05-00145 JMS/BMK, ORDER GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
AND/OR FOR PARTIAL SUMMARY JUDGMENT